## Case No. 15,140.

### UNITED STATES v. FOSSATT.

### SAME v. BERREYESA.

[1 Cal. Law J. 315.]

District Court, N. D. California. 1862.

MEXICAN LAND GRANTS—LOCATION OF BOUNDARIES — OBSCURE DESCRIPTIONS — LOCATION OF QUANTITY IN EXTERIOR BOUNDARIES.

[This was a claim by Charles Fossatt for the Rancho Los Capitancillos. The claim was confirmed by the district court for one league "more or less." Case No. 15,137. Upon appeal, the supreme court limited the grant to one league to be taken within the boundaries designated in the grant. Case remanded. 20 How. (61 U. S.) 413. A continuance was allowed the United States in order to take

further testimony in relation to the location of the boundaries. Case No. 15,138. Subsequently the district court passed upon the location of three of the boundaries, the fourth (the northern) to be determined by quantity. Id. 15,139. An appeal from the decree was determined to have been brought prematurely, the decree not being final. 21 How. (62 U. S.) 446. A survey having been made, the case is now heard for a final determination of the boundaries and locations.]

OPINION OF THE COURT. By the decree of the supreme court of the United States, there was "confirmed to Charles Fossatt one square league of land, to be surveyed within the southern, western, and eastern boundaries designated in the grant, and to be located, at the election of the grantee or his assigns, under the restrictions established for the survey and location of private land claims in California, by the executive department of this government." The external boundaries mentioned in the grant this court was directed to declare, and the cause was remanded for further proceedings, in conformity with the opinion of the supreme court. Much testimony was taken, and elaborate arguments heard as to the location of the southern boundary, which, at that stage of the cause, was alone disputed. After great consideration, this court, by its decree, determined the location of that boundary, and directed the league of land confirmed to the claimant to be surveyed within that and the other external boundaries of the grant, as ordered by the supreme court. From this decision a second appeal was taken, but the supreme court declined to pass upon the question until an actual survey of the land should be made, and all the boundaries established and laid down in an official plat approved by a final decree of this court. A survey has accordingly been made and returned into this court for its approval. The objections to it are two: First, that the external boundaries of the grant within which the league is to be surveyed are not correctly established; second, that the land is improperly located within the exterior boundaries.

1. Of the three boundaries mentioned, two only are disputed. With regard to one of these, the southern, this court has fully expressed its opinion. The whole subject was elaborately discussed, and I have been unable to perceive any ground for doubting the correctness of the conclusion arrived at.

2. The location of the other boundary, which formed the agreed line of division between the rancho of Berreyesa and that of Justo Larios, has now to be determined. The valley of Capitancillos, a long and narrow tract of land lying between the pueblo hills on the north, and the Sierra Azul on the south, had, from an early day, been in the possession of two persons, of whom one, Galindo, occupied the western portion, and the other, Chaboya, the eastern. Justo Larios succeeded to the

possession of Galindo; José Reyes Berreyesa, to that of Chaboya. Each of them obtained a grant,—Justo Larios for the lower, and Berreyesa for the upper, portion of the valley. Before either grant was issued, a dispute had arisen between the two occupants of the cañada as to their respective limits. It was caused by the abandonment by Larios of the old house of Galindo, and the erection of another house a short distance below the junction of the Arroyos Alamitos and Seco, and within the limits of the tract claimed by Berreyesa. Each presented to the governor a diseño, including the disputed tract, and a grant to either was withheld until the settlement of the controversy. The matter was, therefore, referred to the prefect, José Tenon Fernandez, before whom the parties appeared, and agreed upon a common line of division, which was traced on the diseño of Berreyesa, by a dotted line, and described in the grants subsequently issued to both. The location of the line so delineated and described is the question to be determined. The description of this agreed line first appears in the report of Fernandez to the governor. In this report Fernandez says: "The litigants have agreed before me that the boundaries of both in the direction of the east, as the sketch of Berreyesa shows, shall be by drawing a straight line from the angle, which the Arroyo de los Alamitos forms with the Seco, direction towards the south, the slope (falda) of the hill, situate in the center of the cañada towards the east, and until it reaches the sierra in such a way that, according to the said sketch, which appears more exact, the said line comes to be a parallel which I have marked with points for the knowledge of your excellency,—with which they have remained content and satisfied."

In the decree of concession in the Berreyesa case, the land granted to him is described as bounded on the west by the rancho of citizen Justo Larios, which has for boundary the angle formed by the Arroyo Seco and that of the Alamitos, the slope of the hill (falda de la loma), situate in the center of the cañada and the sierra. In the titulo, or final grant, the boundary is described in language which, literally translated, is obscure. The rancho of Larios is said to have for boundary "the angle formed by the Arroyo Seco and that of the Alamitos, direction towards the south, the falda of the hill situated in the center of the cañada, 'asi al este hasta llegar a la sierra.'" By the translation, or, rather, the construction, given to this phrase, the line would be described in English as "commencing at the angle of the creeks, running thence in a southerly direction along the eastern falda of the hill, and thence to the sierra." It appears to be admitted that the direction of the line was southerly, according to the points of compass, as laid down on the diseño, and the expression, "rumbo al sur," is construed to refer to the course of the boundary line. But the application of the phrase "asi al este" to the falda of the loma, thereby indicating the eastern slope of the hill, is strenuously disputed. The language of the grant is evidently very rude and inartificial. It may be that the words in question were intended to refer to the loma, and to designate the hill situated towards the eastern portion of the tract, as distinguished from another loma, situated on the west, and known as the "Mojonera del Pueblo," or landmark of the pueblo; or, it may be, that the words referred to the whole boundary line, and meant that the angle of the creeks and the falda of the loma formed the eastern boundary of the land of Justo Larios.

I do not deem it material to determine the true construction of this phrase, for, if the description in the grant be ambiguous, or wholly silent on the point, the diseño shows that the dotted line marked by Fernandez passed on the eastern extremity of the small elliptical figure which rudely, but not very inaccurately, represents the loma. This diseño, which Fernandez availed himself of as being the more exact, is drawn with unusual accuracy. The angle formed by the creeks, the lomita, the range of hills called "Lomas Bajas," and the main Sierra Azul are unmistakably represented. From the angle of the creeks, passing by the eastern end of the loma, cutting the range of lomas bajas, and reaching the sierra, the dotted line of Fernandez is drawn, and inscribed "Lindero," or boundary. On a mere inspection of the map, its location would seem indisputable. But it unfortunately happened that the draftsman of the diseño mistook the true position of the loma, situated in the center of the cañada, and represented it as situated to the eastward of its true position. In the then condition of the country the error was insignificant, but it becomes of great importance in view of the subsequent development of the quicksilver veins on the ridge known as the "Lomas Bajas." For, if the calls for the angle of the creek and the "falda of the loma," shown by the diseño to be the eastern extremity of that hill, be taken as controlling the location of the boundary line, the latter will deflect far to the east, and will leave on the westerly, or Justo Larios', side, almost the entire range of the lomas bajas, including the mining peak of New Almaden.

The question, therefore, arises: Is the direction of this line to be determined by those two calls alone, or should it be controlled by other calls and indications of the diseño of higher dignity, and concerning which a mistake was more improbable? It is evident, from the diseño, that the Cañada de los Capitancillos was supposed to run in a direction nearly east and west. As the dispute between Larios and Berreyesa only referred to the mode in which the valley should be divided between them, and as Berreyesa claimed that the recently erected house of Larios should be the boundary, it was most natural that, when the controversy was settled, a

line should be adopted dividing the valley in a direction perpendicular to its length. Such a line was accordingly drawn on the diseño, and described in the grant as running towards the south, i. e. nearly at right angles to the general course of the valley. The object of Berreyesa was to resist the further encroachment of Larios on lands for which, eight years previously, he (Berreyesa) had obtained a provisional title from Figueroa; while the claim of Larios was derived from a purchase of the house (not including the lands) of Galindo, and he had, as observed by Berreyesa to the governor, "room to extend himself outside of the cañada," while the latter "had absolutely nowhere to enlarge." It is, therefore, highly improbable that Larios would have claimed, or Berreyesa assented to, a line which, running diagonally in a southeasterly direction across the valley, would take from the latter a large tract of land, being far to the eastward, not only of the angle of the creeks and the falda, but also of Larios' house, and assign to the latter almost the entire range of the lomas bajas expressly solicited by Berreyesa in his petition. It may, at all events, be confidently asserted that, had such been the intention of the parties, the universal desire of Californians to bound their ranchos by well-known natural objects would have induced them to fix upon the Alamitos creek as their common limit, and thus secure a certain and precise boundary, nearly coinciding with the imaginary line they are supposed to have adopted. That, up to a comparatively recent date, the mining peak as well as a large portion of the lomas bajos were generally recognized as belonging to Berreyesa may be inferred from the fact that, in the denouncement of the New Almaden mine, by Castillero, and in the act of possession, by the alcalde, Pico, it is formally alleged to be "on the land of the retired sergeant, José Reyes Berreyesa." The latter was present at or about the time when possession was given, and claimed to be the owner of the land. Some negotiations between him and the discoverers of the mine appear to have taken place, while neither Justo Larios, nor any one in his behalf, seems to have asserted or been recognized as possessing any rights whatever in the land on which the mine was situated.

3. But the diseño itself affords what has appeared to me incontestable evidence of the location of the line to which the parties intended to assent. On it the range of lomas bajas is distinctly delineated. At the eastern extremity of this range is a hill of greater elevation than the rest, which is turned on the east by the Alamitos. This hill is undoubtedly the mining peak or hill of New Almaden. The Alamitos is represented as issuing through a gorge between it and a mass of hills further to the east, and running across the plain, diagonally, to the junction with the Seco. If, on this diseño, the line as claimed by the representatives of Larios be drawn, it would pass to the eastward of the mining peak, and run in an east-southeast direction, nearly coinciding with the course of the Alamitos. But the line actually marked by Fernandez is essentially different. It is drawn in a nearly southerly direction, and it cuts the range of the lomas bajas at about one-fifth the entire distance from their western to their eastern extremity—leaving on the left, i. e. on the eastern, or Berreyesa, side, not only mining hill, but nearly four-fifths of the entire range. Nor does it at all coincide with the course of the Alamitos, but, on the contrary, makes, with the general course of that stream, an angle of perhaps 45 degrees.

Again: Behind, or to the south, of the lomas bajas, is represented the range of mountains called "Sierra Azul." On their western extremity is the peak known as Mount Umunhum; while, far to the east the lofty mountain now called Mount Bache, is distinctly delineated. If the line contended for by the claimants be drawn on the diseño, it would run in the direction and even to the eastward of Mount Bache. The line, as drawn by Fernandez, strikes the sierra at a point less than one-sixth of the entire distance between Mounts Umunhum and Bache, leaving five-sixths of the entire range of those hills on the eastern, or Berreyesa, side. It is, therefore, evident that, to treat the call for the falda as determining the course of the entire boundary line, we must sacrifice, not only the call for the course of the boundary line as expressed in the grant, but every other indication of the diseño. It does not appear that Fernandez visited the cañada before adjusting the dispute. The line was assented to by the parties, who must have been familiar with the natural features of the country. The direction in which their common line should cross the valley, the portions of the disputed tract to be assigned to each, the course of the boundary, whether towards Umunhum, so as to leave the greater part of the lomas bajas to Berreyesa, or towards Mount Bache, so as to leave nearly the whole range to Justo Larios; whether it was to cross the Alamitos, making a large angle with the general course of that stream, and leaving the gorge through which it debouches into the valley far to the east, or whether it was to run towards the gorge and in a course not far from parallel with that of the Alamitos,—all these were points which we must suppose to have been determined, and on which it is highly improbable that the diseño would have erroneously represented the agreement of the parties.

It is urged that the lomita was a well known and conspicuous object in the center of the valley, and that, in selecting its eastern falda as the western limit of Berreyesa's land, the litigants adopted the boundary concerning which there could have been no misapprehension or mistake. The observation is just, and a similar one can be made with regard to the angle formed by the two creeks

also adopted as a boundary. But the mistake which occurred was as to the relative position of these objects. It was supposed that the angle of the creeks lay nearly north from the "falda," and that a line drawn through these two objects would run in a direction nearly southerly, and at right angles to the general course of the valley, and would, when produced, cut the lomas bajas, and strike the sierra at the points indicated on the diseño. The question, therefore, is not whether the calls for the angle of the creeks and for the falda shall be rejected, for these natural objects are undoubtedly agreed upon as fixing the limit of the two ranchos; but, whether we shall allow the subsequent direction of the line to be determined by their relative position, concerning which there was an evident mistake, and give to it, when produced, a course entirely inconsistent with the course specified in the grant, and clearly indicated by natural objects on the diseño.

The theory of the claimants is founded on a translation of the language of the grant, which by no means expresses its literal meaning. In the printed translation the words of the description are rendered as follows: "Bounded by the rancho of J. R. Berreyesa, which has, for a boundary, a line running from the junction of the Arroyo Seco, and the Arroyo Seco southward to the sierra, passing by the eastern base of a small hill situated in the center of the cañada." But this, though possibly a correct interpretation, is by no means a literal translation of the original. In the latter no line is, in terms, called for. The rancho of Berreyesa is said to have for boundary "the angle formed by the Arroyo Seco and that of the Alamitos, direction towards the south, the eastern falda of the loma, situated in the center of the cañada until the sierra is reached." It has already been observed that the application of the words "asi al este" to the falda, and the interpretation of them as indicating the eastern falda is disputed, and, perhaps, doubtful. But, admitting this interpretation to be correct, the words of the description seem merely to indicate two natural objects which formed the boundary, from the second of which a line was to be drawn to the sierra, in a southerly direction according to the compass marks on the diseño. It is certainly not explicitly stated, as in the translation, that the boundary was to be "a line running from the junction of the creeks southward to the sierra, passing by the eastern base of the hill," etc. The language of the report of Fernandez, however, may perhaps justify the interpretation that has been given to the words of the grant. Fernandez describes the common boundary of the litigants as "a line from the angle of the creek, direction south, the eastern falda of the lomita, and until the sierra is reached." That he supposed a line drawn from the junction to the falda, and thence produced, would be a straight line, cannot be doubted; but he also supposed it would run in a southerly

direction, or in the direction marked south on the diseño, and that it would strike the lomas bajas and the sierra at the points thereon indicated. But he does not expressly state that the line from the falda to the sierra is to be the line from the junction to the sierra produced. If the position of the faldá was to determine, absolutely, the course of the boundary beyond, Fernandez could hardly have supposed that he had removed all cause of dispute. The term "falda" does not indicate any point on a hill, but a part of it. It signifies the slope, or radex montis. It probably applies, in strictness, only to the lower slope, or that part lying between the plain and a line drawn midway between its base and its summit, though it seems sometimes to be applied to the entire slope. But, giving it the more restricted interpretation, it is insufficient to fix the direction of the line with any certainty. The lomita in question is situated at a comparatively small distance from the angle of the creeks. If the boundary is to be the production of a line drawn from the angle to some point on the falda, a variation of the position of the latter of perhaps a few yards will so change the course of the line, when produced, as to materially alter the dimensions of the tract. The boundary, therefore, would still have been left, within considerable limits, arbitrary and uncertain.

If it be said that the point on the falda intended to be adopted, is shown by the diseño, it may be answered, that the diseño also shows, by unmistakable natural objects, the direction of the line, and that its course is to be determined by those indications, notwithstanding that the parties erroneously supposed, and represented on the diseño, that the line so drawn would pass by the eastern base of the hill. The object of critically examining the language of the grant has been to show that it does not, in terms, require the course of the boundary to be determined by the falda, and that, from the indefinite character of that call it is highly improbable it should have been intended to have such an effect. We are thus compelled to resort to the diseño to ascertain its location, and we at once discover the nature of the error into which the parties fell, and discern what was their intention when the line was agreed upon by the parties. As to that intention, there is, I think, no room for doubt. It was designed to divide the valley between the disputants by a line drawn across or at right angles to its general course. On the north, it was to commence at the angle of the creeks; at the south, it was to terminate at a point opposite, crossing the lomas bajas, and striking the sierra at the points indicated on the diseño. The falda of the lomita was also adopted as the western limit of the flat land on the Berreyesa side; and it was supposed, erroneously, as now appears, that a straight line could be drawn between the points just mentioned which would cross the eastern base falda. As that is found to be impossible, it has seemed to me

that the call for a straight line should be rejected, and the boundary fixed by drawing a line from the angle of the creeks to the falda, and thence across the valley to the points in the lomas bajas and the sierra to which the diseño shows it was intended to be drawn. Having thus ascertained the location of the three external boundaries of the grant, it remains to be determined how the league of land confirmed to the claimant shall be located within them.

It is contended by the New Almaden Mining Company that the tract should be located as far as possible on the flat lands of the cañada, and excluding, except so far as is necessary to make up the required quantity, the lomas bajas on the southerly side. The grounds on which this location is urged are: (1) That the name of the rancho, the nature of the land, and the occupation and cultivations of the grantee, clearly show that the tract of level land between the Capitancillos and the lomas, was that which he chiefly desired, and which constituted the principal value of the grant to a California rancher. That by compelling him to take what he asked for, no injustice will be done; while, on the other hand, it would be unreasonable to permit him to locate the greater part of his league on the lomas bajas, which are only valuable by reason of their metalliferous veins. (2) That the New Almaden Company, as owners of a grant for two leagues on the land of their mining possession, have the right to insist that the adjoining ranchos shall be so located as to permit the grant to them to be satisfied out of the sobrante.

It may be admitted that the level portion of the valley was chiefly desired by both Berreyesa and Justo Larios. But it does not follow that the value of the lomas was on that account overlooked. Berreyesa expressly states to the governor that "his petition had always been for two sitios from the house of Larios to the matadero, with all the hills that belong to the valley," and he is at pains, to delineate, with great distinctness, these hills on his diseño. It is not clear that, as a range for cattle, the lomas were at all inferior to the more level land. Towards the west, especially, and within the boundaries of the Larios grant, they are of no great height, and slope towards the plain on the north and the arroyo on the south by gentle declivities. They are covered throughout their whole extent with a growth of wild oats, and during at least a portion of the year must afford more abundant pasture than the more level portions of the tract. That Justo Larios supposed himself the owner of all the tract included within the great natural objects which fix the limits of the cañada, cannot, I think, be doubted; and it is equally clear that, if a judicial delivery of the possession had been given, the officer would, under the grant of "a league a little more or less," have measured to him the whole valley including the inconsiderable

fractional excess beyond one league comprised within its boundaries. By the decision of the supreme court the quantity confirmed is restricted to one league; but to compel the claimant to select that league in a particular part of the tract, such as we suppose he might have originally preferred, would be unjustifiably to narrow the right of election accorded by the judgment of the supreme court.

The claim set up by the New Almaden Company for two leagues of land was rejected by this court. In the opinion, however, of one of the judges who concurred, pro forma, in the judgment of the court, the claimants had an equitable title which the United States were not at liberty to disregard. That title was founded on a dispatch addressed to the governor of California by the minister of relations, in which the former was advised that the president had been pleased to accede to the petition of Castillero for two leagues of land on his mining possession, and the governor was directed to put him in possession in conformity with the colonization laws. By one of the judges, this dispatch was considered, under the authority of the case of Castillero v. U. S., 23 How. [64 U. S.] 469, as "operating to adjudicate the title," and as an order to the governor to make the formal grant, as required by the colonization laws, in case the land should be found to be vacant. To have treated it as constituting, per se, a grant of the land would have been to attribute to Castillero a fraud upon the Mexican government; for he was well aware that two leagues of land, measured in every direction from the mouth of the mine, would include a considerable portion of the lands long previously granted to Larios and Berreyesa. It was, therefore, considered as the official expression of the president's assent to the petition of Castillero; and a direction to the governor to make the grant in conformity with the colonization laws, i. e. out of vacant and ungranted public land. A dispatch somewhat analogous, and imposing a similar duty on the governor, had already been decided by the supreme court to "operate to adjudicate the title."

If this be the true construction of the dispatch it would have been the first duty of the governor to inquire whether the land asked for was vacant, or whether it belonged to any private individual, pueblo, etc. On learning that a part of it belonged to two adjoining rancheros, he would either have adopted their external boundaries as the limits of the grant to Castillero or he would have suspended the proceeding until their lands should be measured and their boundaries legally established. In the latter event it cannot, I think, be doubted that Larios would have been put in possession of the whole tract within his external boundaries, and the fraction of the unit of measurement in excess of one league would have been treated as

passing under the words "poco mas ó menos." But, at least, if restricted, as now, to the precise quantity of one league, he would have been allowed to select its location. If it be urged that he is now seeking to locate it on mineral lands, whereas, his grant was for grazing land, it may be replied that the New Almaden Company are endeavoring, with less right, to attain a similar object. Their right to the mine, with the pertinencias allowed by law, was acquired by discovery, registry, and working. Their alleged grant of two leagues was solicited and bestowed merely to supply wood for their burnings. As between them and Larios it is at least as inequitable that, under a grant of this description, which, by Mexican law conveyed no title to the minerals beneath the surface, they should obtain the range of the lomas, in which several mines held under titles derived from Larios' are now in operation, as to permit Larios or his assigns to elect to locate his league on the same land.

If the claim for the two leagues should be rejected by the supreme court, the New Almaden Company would cease to have any right or interest to control the survey of the Larios claim. But, even if it be confirmed, I have been unable to perceive any just ground for limiting the right of election of Larios or his assigns, which the supreme court have declared him to possess. But, if the conclusion arrived at as to the location of the dividing line between the ranchos be correct, this question is comparatively unimportant; for it will not be possible to locate a league within the southern, western, and eastern boundaries, without including the greater part of the level land of the valley. It can, therefore, be no longer objected that those lands are not embraced within the survey. The survey returned into court must, therefore, be modified in accordance with this opinion; that is, a league of land must be measured within the western and southern boundaries as established by the present survey and the eastern boundary as declared in this opinion, the last-mentioned boundary to consist of a line drawn from the angles of the creeks to the eastern falda of the lomita, and from thence to the sierra, in such a direction as to pass the lomas bajas and to strike the sierra at the points indicated on the diseño as near as may be, and the fourth line to be run for quantity, at the election of the grantee, or his assigns.